**KLESTADT WINTERS JURELLER**    **Hearing Date: April 3, 2018**
**SOUTHARD & STEVENS, LLP**    **Hearing Time: 10:30 a.m. (EST)**
200 West 41st Street, 17th Floor
New York, New York 10036    **Objection Date: March 27, 2018**
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Stephanie R. Sweeney

*Counsel to Gregory M. Messer, Chapter 7*
   *Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re                  :
                         :          Chapter 7
121-08 Jamaica Avenue LLC,    :
                         :          Case No. 16-40437 (ESS)
           Debtor.     :
-----------------------------------------------------------x

**CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF ORDERS, PURSUANT TO
11 U.S.C. §§ 363(B), (F), AND (M) AND RULES 2002 AND 6004 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE: (I) (A) AUTHORIZING THE PUBLIC SALE
OF THE DEBTOR'S REAL PROPERTY LOCATED AT 121-08 JAMAICA AVENUE,
RICHMOND HILL, NY 11419; (B) SCHEDULING A HEARING TO CONFIRM THE
RESULTS OF SUCH SALE TO THE HIGHEST OR BEST BIDDER; (C) APPROVING
CERTAIN TERMS AND CONDITIONS OF SALE; AND (D) APPROVING THE
MANNER AND EXTENT OF NOTICE; (II) (i) CONFIRMING THE RESULTS OF THE
PUBLIC SALE; AND (ii) AUTHORIZING THE TRUSTEE TO CLOSE ON THE SALE
TO THE WINNING BIDDER OR BACKUP BIDDER AT THE PUBLIC AUCTION**

**TO THE HONORABLE ELIZABETH S. STONG,**
**UNITED STATES BANKRUPTCY JUDGE:**

Gregory M. Messer, as Chapter 7 trustee (the "Trustee") of the estate of 121-08 Jamaica

Avenue LLC, the above-captioned debtor (the "Debtor"), by his attorneys, Klestadt Winters

Jureller Southard & Stevens, LLP, hereby submits this motion (the "Sale Motion") seeking entry

of orders, pursuant to 11 U.S.C. § 363(b), (f), and (m) and rules 2002 and 6004 of the Federal

Rules of Bankruptcy Procedure: (I) in substantially the same form as that annexed hereto as

Exhibit A, (a) authorizing the sale of the estate's interest in the real property located at 121-08

Jamaica Avenue, Richmond Hill, New York 11419 (the "Property"), free and clear of all liens, claims, encumbrances, and interests (the "Liens"), to the highest and best bidder at a public auction sale; (b) scheduling a hearing to confirm the results of the public sale of the Property to the highest and best bidder at the public sale; (c) approving the terms and conditions that will govern the public sale of the Property; and (d) approving the manner and extent of notice of the public sale of the Property (the "Sale Procedures Order"); and (II) in substantially the same form as that annexed hereto as Exhibit B, (i) confirming the results of the public auction sale; and (ii) authorizing the Trustee to close on the sale of the Property to the winning bidder or the backup bidder (the "Sale Order," collectively with the Sale Procedures Order, the "Sale Orders") and respectfully sets forth as follows:

## PRELIMINARY STATEMENT

After consideration and payment of valid Liens and closing costs, the Property is believed to have equity and value for the Debtor's estate in an amount in excess of $500,000. Accordingly, the Trustee is duty bound to liquidate the Property in the manner believed to achieve the highest and best price. By the Sale Motion, the Trustee seeks the entry of two orders, the first authorizing the form and manner of notice and sale, and the second confirming the results of the auction and authorizing the Trustee to close on the sale of the Property to the highest bidder. For all the reasons stated below, the Trustee respectfully submits that entry of the proposed Sale Orders is in the best interests of the Debtor's estate and its creditors and should be approved.

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

1.      This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M) and (N).

2.      Venue of this case is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 363(b), (f), and (m) of Title 11 of the United States Code (the "Bankruptcy Code") and rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

4.      On February 2, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      On December 8, 2017, this Court entered an order approving the conversion of the Debtor's chapter 11 case to one under chapter 7 [Docket No. 123].

6.      On March 7, 2016, the Debtor filed its bankruptcy schedules and statement of financial affairs [Docket No 14].

7.      The Debtor's Schedules list the value of the Debtor's fee simple interest in the Property as $5,000,000.00. The Debtor's Schedules provide that Karibworks Enterprises, LLC ("Karibworks") and the New York City Department of Finance maintain secured claims against the Property in the amounts of $1,173,014.00 and $76,924.78, respectively.

8.      The secured claims of Karibworks will be determined in the context of an adversary proceeding currently pending before this Court. However, pursuant to a Payoff Letter received from Karibworks dated as of February 20, 2018 (the "Payoff Letter"), Karibworks alleges that its secured claims against the Property, including estimated fees and costs, will total $2,530,439.12 as of March 15, 2018. As provided in the Payoff Letter, Karibworks "supports the Trustee's efforts in selling the Property and resolving the amount of the Karibworks' claim without further litigation with the Debtor."

9.      The Trustee filed an application to retain Maltz Auctions, Inc. ("Maltz") as broker and auctioneer to market and sell the Property, which application is currently pending [Docket No. 160].

10.     The Trustee believes it is in the best interests of the estate and its creditors to move forward with a public sale of the Property.   Subject to this Court's approval, the Trustee seeks to schedule the public sale for April 26, 2018 at 11:00 a.m. at the Sheraton LaGuardia East Hotel, 135-20 39th Avenue, Flushing, New York 11354 (the "Public Sale").

11.     In order to facilitate the Public Sale of the Property, the Trustee prepared the Terms and Conditions of Sale annexed as Exhibit C which, subject to this Court's approval, would govern the submission of competing offers at the Public Sale.  The Trustee submits that the proposed Terms and Conditions of Sale are customary, reasonable, and in the best interests of the Debtor's estate and its creditors.

12.     The salient provisions of the proposed Terms and Conditions of Sale are as follows[1]:

   a)  Prior to the commencement of the Public Sale, bidders must deposit $225,000 in order to bid on the Property.

   b)  Within forty-eight (48) hours of the Public Sale, the Successful Bidder must post an amount equal to ten percent (10%) of the accepted highest or best bid at the Public Sale, less its deposit, plus a Buyer's Premium in the amount of four percent (4%) of the accepted highest or best bid at the Public Sale. The Successful Purchaser, and the Second Highest Bidder in the event of a Successful Purchaser's Default, are solely responsible to pay Maltz the Buyer's Premium.

   c)  The Successful Purchaser must pay the balance of the purchase price for the Property to the Trustee by certified check or bank check or by wire in immediately available federal funds.  The Successful Purchaser must close title to the Property within thirty (30) days after entry of the Sale Order, TIME BEING

---

[1]  Terms capitalized but not defined herein shall have the meanings assigned to them in the Terms and Conditions of Sale. All parties should read the Terms and Conditions of Sale in their entirety and not rely on the summary herein. In the event of any discrepancy between the Terms and Conditions of Sale and this summary, the Terms and Conditions of Sale shall control.

OF THE ESSENCE, although such date may be extended solely by the Trustee. Notwithstanding the foregoing, the Trustee shall grant the Successful Purchaser a single thirty (30) day extension, at the request of the Successful Purchaser, provided the Successful Purchaser posts an additional, non-refundable deposit equal to ten (10%) percent of the purchase price prior to the tenth (10th) day following entry of the Sale Order.

d) If the Successful Purchaser fails to post the total required require ten percent (10%) deposit and four percent (4%) Buyer's Premium within 48 hours following the Public Sale, the Trustee, in his sole and absolute discretion, may, within three (3) business days of such Successful Purchaser's Default, deem the second highest bidder to hold all benefits and obligations under the Terms and Conditions of Sale and Memorandum of Sale, as the New Successful Purchaser.

The only commission that will be paid is to the Licensed Real Estate Broker, if any, who registers the Successful Purchaser in accordance with the Broker Participation Agreement and has received confirmation of receipt and acknowledgement of valid registration by Maltz.

e) The Property is being sold "AS IS," "WHERE IS," "WITH ALL FAULTS," without any representations, covenants, guarantees or warranties of any kind or nature and free and clear of all Liens, with such Liens to attach to the proceeds from the sale. The Property shall not be delivered vacant of tenancies.

The precise terms and conditions are fully set forth in the Terms and Conditions of Sale, and interested parties are encouraged to read the Terms and Conditions of Sale in their entirety.

13.    In accordance with Bankruptcy Rules 6004(a) and (c) and 2002(a)(2), the Trustee, through his counsel, will serve a Notice of Intended Sale and Sale Hearing (the "Sale Notice"), in substantially the same form as that annexed hereto as Exhibit D, on the following parties:  (a) all known holders of Liens against the Property; (b) all known holders of judgments against the Debtor; (c) the Debtor's counsel; (d) counsel to Karibworks; (e) the Debtor's known creditors; (f) all government agencies and taxing authorities required to receive notice of proceedings under the Bankruptcy Rules; (g) all parties that have filed a notice of appearance in the Debtor's case; (h) all parties that expressed an interest in the Property to the Trustee or his professionals; and (i) any other parties not otherwise listed here that are entitled to notice pursuant to

Bankruptcy Rule 2002.  The Sale Notice will, among other things, advise all interested parties of the Public Sale's date, time, and location.

14.     At the conclusion of the Public Sale and subject to Court approval, the Trustee will determine, in his sole business judgment, the highest or best offer for the Property.  The Trustee respectfully requests that a hearing to confirm the results of the Public Sale and consider entry of the Sale Order be scheduled during the weeks of April 30 or May 7, 2018 (the "Sale Hearing").

## RELIEF REQUESTED AND BASIS FOR RELIEF REQUESTED

15.     By this Sale Motion, the Trustee requests authority, pursuant to section 363 of the Bankruptcy Code, to sell the estate's interest in the Property, free and clear of all Liens, pursuant to the Terms and Conditions of Sale at the Public Sale.

### A.  The Public Sale of the Property Should be Approved

16.     The Trustee is duty bound to liquidate the Property by virtue of section 704(a)(1) of the Bankruptcy Code which states, in relevant part that, "[t]he trustee shall (1) collect and reduce to money the property of the estate for which such trustee serves. . . ."

17.     Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Although section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, the United States Court of Appeals for the Second Circuit, in applying this section, has required that it be based upon the sound business judgment of the trustee. See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 466 (2d Cir. 2007) (quoting Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983)); Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re

Chateaugay Corp.), 973 F.2d 141, 145 (2d Cir. 1993); Parker v. Motors Liquidation Co. (In re Motors Liquidation Co.), 430 B.R. 65, 83 (S.D.N.Y. 2010) ("The overriding consideration for approval of a Section 363 sale is whether a 'good business reason' has been articulated.") (citations omitted).

18.     In addition to requiring sound business reasons to approve a sale pursuant to section 363(b) of the Bankruptcy Code, many courts have required a showing that the price to be obtained for assets be fair and reasonable; that the sale to the proposed purchaser was negotiated in good faith; and that it does not unfairly benefit insiders, the purchaser, or a certain creditor or class of creditors.  See, e.g., In re Channel One Communications, 117 B.R. at 494-97; In re Indus. Valley Refrig. & Air Cond. Supplies, Inc., 77 B.R. 15 (Bankr. E.D. Pa. 1987).

19.     The terms of such sale are also generally within the sound discretion of the trustee.  See, e.g., In re Ionosphere Clubs, Inc., 100 B.R. 670 (Bankr. S.D.N.Y. 1989) (approving sale of debtor's airline shuttle assets where the debtor articulated a compelling business reason for the sale and the price represented fair value and evidenced exercise of independent good faith and non-coerced business judgment).

20.     Under Bankruptcy Rule 6004(f)(1), "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." FED. R. BANKR. P. 6004(f)(1).  In practice, the preferred method is to conduct an auction because an auction will most often result in a greater number of potential bidders in the shortest amount of time.  Public auction sales help ensure that (i) buyers come prepared to buy, (ii) there is an expeditious sale, consistent with a trustee's statutory duties, (iii) the property's true market value will be reached, and (iv) there is open and robust competition among buyers that is transparent to the trustee and court rather than controlled by the brokers.

21.     Here, the Trustee is exercising sound business judgment by selling the Property at the proposed Public Sale.  The Trustee has determined that the proposed Public Sale will ensure that the highest and best offer is received for the Property.  This Court has routinely approved trustees' sales of real property by auction.  See e.g., In re Imperial Capital LLC, Case No. 14-10236 (SCC) (Bankr. S.D.N.Y. Apr. 13, 2015); In re Anthony Vaughan, Case No. 12-13740 (REG) (Bankr. S.DN.Y. Dec. 4, 2013); In re Third Toro Family Limited Partnership, Case No. 11-11723 (SHL) (Bankr. S.D.N.Y. Jan. 19, 2012); In re Marc Dreier, Case No. (SMB) (Bankr. S.D.N.Y. June 16, 2009).

22.     The Public Sale will ensure that all interested parties have the opportunity to bid on the Property, and the Debtor's estate will thereby benefit by securing the highest and best offer for the Property.

23.     The Trustee, through his counsel, will serve copies of the Sale Notice upon all interested parties in this case to advertise the Public Sale.  Maltz will continue to market the Public Sale by, among other things, direct telephone and fax solicitation, internet advertising, newspaper, trade publication and/or journal advertising, viewings/open houses, and other such marketing methods as may be necessary in order to properly market the Property.

24.     The Trustee believes that there will be ample notice of the Public Sale in order to encourage active bidding and to achieve the highest and best offers for the Property.

25.     For these reasons, the Trustee respectfully requests that he be authorized to proceed with the Public Sale.

**B. The Property Should be Sold Free and Clear of Liens**

26.     The Trustee seeks approval of the sale of the Property free and clear of all Liens and for authority to satisfy certain Liens following the closing.

27.     Property may be sold outside the ordinary course of business under section 363(b) of the Bankruptcy Code, free and clear of all liens, claims and encumbrances under Bankruptcy Code section 363(f), only if:

1.  applicable nonbankruptcy law permits sale of such property free and clear of such interest;

2.  such entity consents;

3.  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4.  such interest is in bona fide dispute; or

5.  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

28.     Accordingly, a trustee may sell property of a bankruptcy estate outside the ordinary court of business if one of the five conditions under Bankruptcy Code § 363(f) is satisfied. See In re Grubb & Ellis Co., Case No. 12-10685 (MG), 2012 Bankr. LEXIS 1279, at *31 (Bankr. S.D.N.Y. Mar. 27, 2012) (discussing Bankruptcy Code § 363(f)); In re Borders Group, Inc., 453 B.R. 477, 483–84 (Bankr. S.D.N.Y. 2011) (discussing Bankruptcy Code § 363(f)).

29.     Here, the Trustee believes that the fair market value of the Property exceeds any Liens against the Property, and the Trustee intends to satisfy Karibworks' mortgages, the secured claim of the New York City Department of Finance, and any outstanding real estate taxes as soon as practicable after the closing.  To the extent there are any other Liens, the Trustee seeks to sell the Property free and clear of such Liens, which such Liens to attach to the proceeds of the sale in the order of their priority.  The Trustee will provide all potential holders of Liens with notice of the Public Sale by the Sale Notice, and they will have an opportunity to object to the relief requested in this Sale Motion.  Any entity that does not object to the Sale Motion shall be deemed to have consented.  See, e.g., Futuresource LLC v. Reuters, Ltd., 312 F.3d 281, 285-86

(7th Cir. 2002) (standing for the proposition that the lack of an objection to a proposed sale of assets counts as consent); <u>Hargrave v. Township of Pemberton (In re Tabone, Inc.)</u>, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); <u>In re Elliot</u>, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988) (citing <u>In re Gabel</u>, 61 B.R. 661 (Bankr. W.D. La. 1985)); <u>see also</u> <u>In re Enron Corp</u>., 2003 WL 21755006 at *2 (AJG) (Bankr. S.D.N.Y. 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)).   Therefore, if a party holding a Lien on the Property who received the Sale Notice fails to object to the Public Sale, the Trustee's sale of the Property free and clear of all Liens satisfies section 363(f)(2) of the Bankruptcy Code.

### C.  The Successful Bidder Shall Be Entitled To 363(m) Protection

30.    Section 363(m) of the Bankruptcy Code protects good faith purchasers at sales conducted under section 363(b) by providing that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

31.    Although the Bankruptcy Code does not define good faith, the United States Court of Appeals for the Second Circuit has provided the following definition of good faith in the context of sales under section 363 of the Bankruptcy Code:

> Good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made. A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders. . . . As just defined, the good-faith analysis is focused on the purchaser's conduct in the course of the bankruptcy proceedings.

Licensing by Paolo v. Sinatra (In re Gucci), 126 F.3d 380, 390 (2d Cir. 1997) (quotations and citations omitted); see In re Motors Liquidation, 430 B.R. at 78 (relying on Gucci definition of good faith in this context).

32.    The Trustee is selling the Property at a Public Sale after interested parties receive notice and are given an opportunity to bid.  The Property has been and will continue to be extensively marketed by Maltz.  After the Public Sale, the Trustee will seek to confirm the results of the sale to the highest or best bidder.  The Trustee submits that the sale to the highest or best bidder will be an arm's length transaction and that the successful bidder will be a good faith purchaser of the Property.

33.    Accordingly, the Trustee respectfully requests that the successful bidder be afforded the protections under section 363(m) of the Bankruptcy Code.

**D.  Waiver of Stay**

34.    Under Bankruptcy Rule 6004(h), orders authorizing the sale of a debtor's assets under section 363(b) of the Bankruptcy Code are "stayed until the expiration of 14 days after entry of the order" authorizing such sale. FED. R. BANKR. P. 6004(h).

35.    A waiver of the stay requirement under Bankruptcy Rule 6004(h) will relieve the Debtor's estate of any financial burdens associated with the Property and reduce the expenditure of additional funds to maintain the Property.  Additionally, such a stay could further delay the date that a new owner can take possession and control of the Property and thus could chill the sale.  Conversely, the waiver of the stay will allow for a smoother transition for the new owner and unburden the Trustee and the estate from any obligations arising from the Property.

36.    For these reasons, the Trustee respectfully requests that the Court waive the requirement under Bankruptcy Rule 6004(h).

### E.  Notice

37.    Bankruptcy Rule 2002(a) requires that notice of motions under Bankruptcy Code section 363(b) be given to "the debtor, the trustee, all creditors and indenture trustees . . . ." FED. R. BANKR. P. 2002(a).  Bankruptcy Rule 2002(c)(1) directs that notices of proposed sales of property of the estate "shall include the time and place of any Auction . . . and the time fixed for filing objections." FED. R. BANKR. P. 2002(c)(1).

38.    The Trustee intends to serve this Sale Motion on: (a) all known holders of Liens against the Property; (b) all known holders of judgments against the Debtor; (c) the Debtor's counsel; (d) counsel to Karibworks; (e) the Debtor's known creditors; (f) all government agencies and taxing authorities required to receive notice of proceedings under the Bankruptcy Rules; (g) all parties that have filed a notice of appearance in the Debtor's case; and (h) all other parties entitled to notice pursuant to Bankruptcy Rule 2002(a).

39.    The Trustee submits that objections, if any, to the Sale Motion, be in writing, filed on the date set forth by the Court, conform to the Bankruptcy Rules and the Local Rules of this Court, and must be filed with the Court.  The Trustee submits that the failure of any objecting party to timely file its objection in accordance with these requirements shall bar the assertion of such objection to this Sale Motion and the Trustee's sale of the Property.

### NO PRIOR RELIEF

40.    No previous application for the relief requested herein has been made to this or any other court.

*[Continued on next page]*

**WHEREFORE**, the Trustee requests that the Court enter (I) a Sale Procedures Order, in substantially the same form as that annexed hereto as Exhibit A: (a) authorizing the Trustee to proceed with the sale of the Property; (b) scheduling the Sale Hearing; (c) approving the Terms and Conditions of Sale; and (d) approving the manner and extent of notice; and (II) a Sale Order, in substantially the same form as that annexed hereto as Exhibit B: (i) confirming the results of the Public Sale and (ii) authorizing the Trustee to close on the sale of the Property to the winning bidder or the backup bidder; and (III) granting such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          March 8, 2018

                                        **KLESTADT WINTERS JURELLER**
                                        **SOUTHARD & STEVENS, LLP**


                                  By:   */s/ Fred Stevens*
                                        Fred Stevens
                                        Stephanie R. Sweeney
                                        200 West 41st Street, 17th Floor
                                        New York, New York 10036
                                        Tel: (212) 972-3000
                                        Fax: (212) 972-2245
                                        Email: fstevens@klestadt.com
                                               ssweeney@klestadt.com

                                        *Counsel to Gregory M. Messer, the Chapter 7*
                                          *Trustee*

13